IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM LENIUS,

    Petitioner,

    v.

RICK HARRINGTON,

    Respondent.                      No. 11-cv-717-DRH-DGW

## MEMORANDUN & ORDER

**Herndon, Chief Judge:**

Now pending before the Court is the Petition for a Writ of Habeas Corpus (Doc. 2) filed by petitioner, William Lenius, on August 18, 2011. For the reasons set forth below, the petition is **DENIED**.

## BACKGROUND

Petitioner, William Lenius, was convicted of first degree murder, attempted first degree murder, aggravated battery, and possession of an explosive or incendiary device in the August, 1993 pipe bomb explosion that killed Wayne Conrad and seriously injured Debra Conrad (Doc. 16-1, p. 7). The trial court imposed concurrent sentences of natural life imprisonment for first degree murder and thirty-nine years for attempted murder, as well as concurrent terms of seven years of imprisonment for aggravated battery and five years for possession of an explosive device. *Id*.

The record revels that petitioner confessed to building a pipe bomb that he intended for his ex-girlfriend, Ellen Marshall, the actual victim's next door neighbor (Doc. 16-1, p. 10). On August 31, 1993, police officers searched petitioner's apartment after learning that Ellen Marshall and her mother suspected him of sending the pipe bomb. *Id*. Police officers recovered wire and tape from petitioner's apartment and later determined that the items matched components of the pipe bomb that exploded in the victim's home. *Id*. at 14. After officers searched his apartment, petitioner agreed to accompany them to the police department where, after hours of interrogation, he confessed that he built the pipe bomb that detonated in the victim's home. *Id*. at 11. The next day, petitioner gave a court-reported statement detailing how he built the bomb and left it in Ellen Marshall's driveway. *Id*. at 14.

Prior to trial, petitioner filed a written motion to suppress his confession. *Id*. at 15. In that motion, petitioner alleged that the officer that interviewed him had misrepresented certain facts that led him to confess—namely, that Ellen Marshall had been killed and that petitioner's fingerprints were found "all over the bomb." *Id*. Petitioner ultimately admitted that he learned prior to his confession that Ellen Marshall was not dead. *Id*. With respect to petitioner's allegation that an officer told him that his fingerprints were found "all over the bomb," the trial court found petitioner's testimony not credible. *Id*. at 17. Specifically, the trial court found that petitioner was "a mature adult" who was "very articulate, forceful, mentally sharp, and strong willed" and had not been coerced into making his

2

confession. *Id*. The trial court denied petitioner's motion to suppress his confession after three days of testimony. *Id*.

The trial court also denied petitioner's pre-trial motion to quash his arrest and suppress the physical evidence gathered from his apartment that was at issue during the same hearing (Doc. 16-1, p. 15). Petitioner argued that police officers had both "seized" him in his apartment and searched it without probable cause. *Id*. The trial court found that petitioner gave voluntary, written consent to search his apartment and oral consent in his interactions with the police. *Id*. at 716. Thus, the trial court found that there had been no arrest when petitioner agreed to speak to the police at his apartment and that police did not need probable cause for their search in light of Petitioner's consent. *Id*.

At petitioner's jury trial, the State introduced medical testimony that demonstrated that the pipe bomb explosion was the cause of Wayne Conrad's death and Debra Conrad's injuries (Doc. 16-1, p. 14). The State also presented evidence that a pipe bomb was left in Ellen Marshall's driveway in a red tool box and was subsequently picked up by her neighbor, Debra Conrad, and taken into the Conrads' home where it exploded. *Id*. at 7. Ellen Marshall testified as to her volatile relationship with petitioner, which had ended shortly before the pipe bomb explosion. *Id*. at 12-13. The State also presented petitioner's confession and testimony from a forensic chemist who explained that:

> Evidence seized from [Petitioner's] apartment was visually similar to
> the wire found in the tool box bomb. A microscopic examination of

3

>  the wire revealed that it was identical to the wire used in the tool box bomb. Samples of tape were similarly consistent.

*Id*. at 13.

After his conviction, petitioner filed a direct appeal with ten arguments, only two of which are relevant to this present action (Doc. 16-2). Specifically, petitioner argued that the trial court's denial of his motion to quash arrest and suppress evidence was against the manifest weight of the evidence. *Id*. at 20. Additionally, he argued that the trial court's denial of the motion to suppress his confession was against the manifest weight of the evidence. *Id*. at 23. The Illinois Appellate Court affirmed the trial court's decision finding that petitioner consented to the search of his apartment and to an interview with police officers (Doc. 16-1, p. 17). The court found that petitioner had not been arrested so there was no need for probable cause. *Id*. Although petitioner argued that he did not see the consent form he signed, the appellate court saw no reason to disturb the trial court's determination that petitioner's testimony on this point was not credible. *Id*. The appellate court also rejected petitioner's claim that his confession was the involuntary product of a "coercive atmosphere" and noted that he had learned the truth regarding Ellen Marshall prior to his confession. *Id*. at 717. As to petitioner's assertion that an officer had falsely informed him that his fingerprints were "all over the pipe bomb," the appellate court saw no reason to disturb the trial court's finding that his testimony on this point was not credible. *Id*. The appellate court also declined to second guess the trial court's conclusion that

4

petitioner's claims that police officers made threats and promises to coerce him into confessing were not credible.  *Id*.  The Illinois Supreme Court denied petitioner's petition for leave to appeal on March 9, 1998.  The United States Supreme Court denied petitioner's petition for certiorari on October 5, 1998.

Petitioner's retained counsel filed an amended petition for post-conviction relief on August 29, 2008 that reiterated the arguments he made on direct appeal with respect to the search of his apartment and his confession (Doc. 16-7. p. 147-56).[1]  Petitioner further argued that he had been deprived of his right to effective assistance of counsel.  *Id*. at 155.  Specifically, petitioner alleged that trial counsel failed to have the State's physical evidence tested and to retain an expert witness to provide an alternate analysis of the physical evidence, despite the fact that petitioner agreed to make funds available for that purpose.  *Id*. at 147-50.  Petitioner also argued that trial counsel had failed to present a proper motion to challenge the search of his property, claiming that the motion challenging the search should have been separate from the motion to quash arrest and suppress evidence.  *Id*. at 153-56.  The trial court denied petitioner's petition in an oral ruling on April 14, 2009.  *Id*. at 155.

Petitioner appealed to the Illinois Appellate Court challenging the issues raised in his post-conviction petition—namely the search of his apartment, his confession, and the effectiveness of his trial counsel (Doc. 16-12, p. 4).  The

---

[1] Although Petitioner filed his original petition for post-conviction relief on October 23, 1998, it appears from the record that multiple attorney withdrawals and continuances have caused significant delay in this case at the state court level.

5

appellate court concluded that petitioner's arguments with regard to the search of his apartment and his confession were barred by *res judicata* because they had been raised and fully addressed on the merits on direct appeal. *Id*. at 7. The appellate court also rejected petitioner's claim that his trial counsel had been ineffective by failing to have the physical evidence in the case tested or analyzed by experts and held that trial counsel made a strategic decision to focus on suppressing, rather than testing, the physical evidence. *Id*. at 12. Moreover, the court noted that petitioner failed to allege any facts to demonstrate that expert testing would have assisted his defense, especially in light of his confession. *Id*. Finally, the court rejected petitioner's claim that counsel had been ineffective by failing to file a separate motion to suppress the physical evidence based on the allegedly unconstitutional search, noting that petitioner had not identified any substantive arguments in that regard that counsel had not actually raised. *Id*. at 15.

Petitioner filed a Petition for a Writ of Habeas Corpus before this Court on August 18, 2011 (Doc. 2). Petitioner raises five grounds for relief:

    A. Petitioner was "seized" without a warrant or probable cause in violation of the Fourth and Fourteenth Amendments and evidence obtained by the constitutional violations was used to convict him;
    B. Petitioner was deprived of his due process rights pursuant to the Fourteenth Amendment as his conviction was obtained by the use of an involuntary confession;
    C. Petitioner was deprived of his constitutional right against unreasonable searches and seizures because of the misconduct of the Niles Police Department;
    D. Petitioner was deprived of his right to effective assistance of counsel when trial counsel failed to file the proper motion to suppress

       evidence resulting from an unreasonable search; and
- E. Plea counsel was ineffective for failing to investigate and challenge, through the use of experts and forensic testing, any of the physical evidence that the State presented to the jury.

## DISCUSSION

This Antiterrorism and Effective Death Penalty Act (AEDPA) (codified at 28 U.S.C. § 2254), imposes a "highly deferential standard for evaluating state-court rulings" on constitutional claims. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Where a state court has adjudicated a petitioner's claims on the merits, this Court may not grant habeas relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). The statute "authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford*, 537 U.S. at 27. AEDPA's standard is a "difficult standard" for habeas petitioners to meet and was meant to be so. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). "The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case." *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (quotations omitted). The relevant decision is that of the last state court to consider the merits of petitioner's claim. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006).

7

### I. Petitioner's Fourth Amendment Claims

In grounds A and C, petitioner challenges the search of his apartment and his alleged seizure. These claims, however, are not cognizable on habeas review. *See Stone v. Powell*, 428 U.S. 465, 482 (1976)(finding where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). A "full and fair" hearing occurs when the petitioner is allowed to present his case in a proceeding that is not a "sham." *Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003); *see also Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) ("a [Fourth Amendment] blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment").

The State has provided petitioner a full and fair hearing of his Fourth Amendment claims which bars this Court's review. Before trial, petitioner filed a motion to quash the arrest and to suppress evidence obtained as a result of the allegedly unconstitutional search. After hearing three days of testimony from petitioner and the officers involved, the trial court denied petitioner's motion finding that no constitutional violations occurred as the officers' entry into the apartment was consensual. Petitioner then presented the same arguments on direct appeal, and the appellate court affirmed the trial court's decision. Petitioner also

8

briefed these arguments during his post-conviction proceedings. As such, petitioner received a full and fair hearing of his Fourth Amendment claims and cannot now attack the search and arrest on habeas review.

## II. Involuntary Confession

Petitioner contends that he was deprived of his constitutional right to due process, in violation of the Fourteenth Amendment to the U.S. Constitution, because his conviction was obtained by the use of an involuntary confession. To succeed on this claim before this Court, petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An "unreasonable application" is where the state court identifies the correct legal rule but applies it in an "objectively unreasonable" manner. *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000).

Petitioner alleges that his confession was coerced because a police officer made two misrepresentations to him: (1) telling him that Ellen Marshall was dead, when she was in fact alive; and (2) falsely informing him that his fingerprints had been found all over the bomb. The Illinois Appellate Court did not disturb the trial court's conclusion that petitioner's suppression hearing testimony with respect to these misrepresentations were not credible. With respect to petitioner's claim that police officers told him Ellen Marshall was dead, as the appellate court found, petitioner admittedly knew the truth prior to his confession. With respect to petitioner's allegation that an officer told him that his

fingerprints were found "all over the bomb," the trial court found petitioner's testimony not credible. A state court judge's credibility assessment is a factual determination that cannot be disturbed on federal habeas review without "clear and convincing evidence" to the contrary. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (federal habeas court has "no license" to reassess credibility of witness who has testified in state court proceeding). Petitioner has failed to present clear and convincing evidence to rebut the state court's credibility findings. As such, petitioner's claim must fail.

### III. Ineffective Assistance of Counsel Claims

Petitioner claims ineffective assistance of counsel on two grounds, alleging: 1) trial counsel failed to file the proper motion to suppress evidence resulting from an unreasonable search, and 2) trial counsel failed to investigate and challenge, through the use of experts and forensic testing, the physical evidence that the State presented to the jury.

As stated above, to succeed on a claim that trial counsel was ineffective before this Court, petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An "unreasonable application" is where the state court identifies the correct legal rule but applies it in an "objectively unreasonable" manner. *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000).

10

*Strickland v. Washington*, 466 U.S. 668 (1984) established a two-pronged standard that a defendant must satisfy to merit relief on an ineffective assistance of counsel claim. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Second, a defendant must demonstrate that he was prejudiced by counsel's deficient performance, showing that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Because counsel is presumed effective, habeas corpus petitioners face a "heavy burden" in establishing an ineffective assistance of counsel challenge. *Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005). The Seventh Circuit has stressed that the "bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one." *Murrell v*. Frank, 332 F.3d 1102, 1111 (7th Cir. 2003). "[O]nly a clear error in applying *Strickland* would support a writ of habeas corpus . . . because *Strickland* calls for inquiry into degrees, thereby adding a layer of respect for a state court's application of the legal standard." *Id*. (internal citations, quotations, and alterations omitted). This Court will deny relief if it finds that the "state court [took] the rule seriously and produce[d] an answer within the range of defensible positions." *Mendiola v*.

11

*Schomig*, 224 F.3d 589, 591 (7th Cir. 2000). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner has not met his heavy burden to show that the state court erred in its application of *Strickland*. Rather, the record demonstrates that the state court identified the controlling federal constitutional standard and reasonably determined that petitioner could not succeed on his claims. Petitioner first argues that counsel was ineffective because the pre-trial motion to suppress emphasized the impropriety of his arrest rather than the search of his apartment. Effective counsel, petitioner argues, would have filed a separate motion challenging the search. However, the record shows that both the arrest and search of his apartment were briefed and at issue during the three-day hearing before the trial court. As such, the appellate court reasonably found that petitioner's ineffective assistance of counsel claim failed as petitioner did not allege a basis for the motion to suppress that his trial counsel overlooked.

Petitioner further argues that his trial counsel was ineffective because he did not hire experts to test and challenge the physical evidence submitted by the State. Petitioner's counsel focused not on testing the state's physical evidence, but rather on excluding it entirely through a suppression motion challenging the search of petitioner's apartment and the alleged seizure of his person. Counsel then sought

12

"to call into doubt the State's case . . . by rigorous cross-examination of the State's expert witness" when that effort had seemingly failed (Doc. 16-12, p. 12). "When," as here, "defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Harrington*, 131 S. Ct. at 791.

Petitioner has failed to show why trial counsel's decision does not constitute trial strategy. A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. *United States* v. *Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Counsel is entitled to formulate a reasonable strategy to balance limited resources in accord with effective trial tactics and strategies. *Harrington*, 131 S. Ct. at 788-89. Further testing the physical evidence could have affirmed the State's position that components of the pipe bomb matched the items found in petitioner's apartment. Accordingly, the state court reasonably concluded that not pursuing expert analysis of the physical evidence was consistent with counsel's trial strategy. As such, petitioner's claim must fail.

## IV. Certificate of Appealability

A district court must issue or deny a certificate of appealibility when it enters a final order adverse to the applicant. *See* Rule 11(a) of the Section 2254

13

Rules; *Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012). Title 28 United States Code § 2253(c)(2) provides that a certificate should only issue if there is a "substantial showing of the denial of a constitutional right." Petitioner has not made such a showing as his claims are either not cognizable on habeas review or meritless. As such, this Court will not issue a certificate of appealibility.

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (Doc. 2) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant, Rick Harrington, and against petitioner, William Lenius.

**IT IS SO ORDERED.**

**Signed this 24th day of March, 2014**

Digitally signed by David R. Herndon
Date: 2014.03.24 16:10:41 -05'00'

**Chief Judge**
**U.S. District Court**

14